PETER SHIELDS, as Executor, etc., Respondent, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

M., plaintiff's testator, a switchman in defendant's employ, while in the discharge of his duties, was standing on the top of a car loaded with coal.   There was a trap in the bottom of the car to dump the coal, which was held in its place by a chain; this chain broke and let down the trap and M. passed through it with the coal, receiving injuries causing his death.   In an action to recover damages, it appeared that about two weeks before the accident a link in the chain was broken and other employes engaged with M. united the parts of the chain by fastening the separated links together with a wire wound around them; about two days before the accident it was discovered that the trap could not be drawn up sufficiently close to prevent the coal from running out and, to prevent this, boards were put over the trap by the employes in M.'s presence, and his attention was called by one of the employes to its condition.   There were cars in perfect condition in the

yard where M. was at work ready for use, and M. had the selection of the cars to be used; he had been directed by the trainmaster to examine the traps to see that they were all fastened so as to be safe, to send the cars with broken chains to the shop for repairs and to use none in an imperfect condition. *Held,* that the submission of the defendant's negligence to the jury was error.

(Submitted March 24, 1892; decided April 12, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made July 30, 1891, which affirmed a judgment in favor of plaintiff entered upon a verdict and also affirmed an order denying a motion for a new trial.

This was an action to recover damages for injuries received by James Murphy, plaintiff's intestate, while in defendant's employ.

The following is the opinion in full :

"James Murphy, the plaintiff's testator, had been in the employment of the defendant for many years, in its depot yard at Poughkeepsie. His general duties were those of brakeman and switchman in the management of the coal cars on and about the coal chute and in the yard at that place. He and others were engaged in gathering up the coal under the chute which fell upon the ground while engines were taking coal. The coal thus falling upon the ground was loaded upon cars and taken upon the chute and dumped. There was a trap in the bottom of each car to which a chain was attached, which, by means of a crank, could be wound up and then hold the trap in its place ; and when a car was to be emptied of coal, this crank was turned and the trap let down and the coal thus discharged. In January, 1889, the deceased was engaged in the discharge of his duties in switching two coal cars, and while standing on the top of a car loaded with coal, the chain broke and let down the trap and he passed through with the coal and was so injured that he died a few months thereafter, and this action was brought to recover damages on account of his death.

"It appeared that about two weeks before the accident one of the links in the chain was broken and the chain was mended

by employes of the defendant engaged in and about the same business with the deceased, by means of wires wound around the two links where the chain broke, and thus fastening them together, and in that condition the car was subsequently used. About two days before the accident it was discovered that the trap could not be drawn up flush with the bottom of the car, and thus the coal would drop out, and then the employes of the defendant, in the presence of the deceased, put boards over the trap to prevent the coal from running out, and thus the car was being used at the time of the accident. No one saw the deceased at the precise time of the accident, and it was only an inference that he went upon the top of the car in the discharge of his duties at the time the chain gave way and he fell through.

" It is claimed on the part of the plaintiff that the chain was imperfectly repaired by the wire wound around the links, and that because of its imperfect condition it gave way, causing the testator's death, and the defendant was held liable for a breach of its duty to furnish the deceased with a safe car for his use.

" We think that upon the undisputed evidence the plaintiff should have been nonsuited. It is undisputed in the evidence that the deceased had the immediate charge of the movement of the cars with which he was engaged. There were cars in perfect condition always in the yard ready for use, and he had the selection of the cars to be used. He was not bound to use an imperfect car, but could at any time select one in proper condition for his use, and it was his business to determine what cars in the yard should be selected for his use. At the time the boards were put in the car to prevent the coal from running out his attention was called to the imperfect condition of the car by one of the employes, and he was informed in very strong language of the propriety of taking the car out of the yard. It does not appear affirmatively that he knew that the chain had been broken, but he could have seen that it had been if he had looked and made any examination. He told one of the defendant's witnesses after the injury, and while he was lying in bed in his house, that if he had thrown the car out he would not have been there. No witness testified to

the breaking of this chain, but it appeared that it was usual when the coal was frozen in the bottom of a car, and the chain could not be moved and the trap thus lowered, for the employes to break the chain so that the trap could be let down, and the inference is that this chain was broken in that way, as there is no evidence justifying the inference that it was broken in any other way. It was proved by his superior, the train-master, under whose direction he worked, that he reported to him in the winter of 1888 that employes were breaking these chains to let down the traps. He was requested to examine the traps to see that they were all fastened up so that the cars would be safe to run, and to be specially careful and get all the cars where chains were broken together and send them to the shop for repairs, and to see that none of them were used in an imperfect condition. He was cautioned not to use any cars that were damaged in any way, and it was made his especial duty to examine the cars and not to use any that were imperfect, if he found any such, but to send them to the shop for repairs. These instructions to the deceased were repeated from time to time. And thus it was made his business to examine the cars and see that imperfect cars were not used. Another witness called on the part of the defendant, who was its agent, having charge of all its business at Poughkeepsie, testified that he received orders from the defendant's superintendent early in January, 1889, to be sure and have the hopper bottoms of coal cars closed before they were sent out of the yard, because there were so many of them being broken by the men wedging them out and breaking the chains, and he told the deceased he should hold him responsible to have those cars when they were broken sent to the shop, and have none of them kept in the yard. This evidence is uncontradicted, and the court and jury had no right to disregard it. Thus we have this state of facts: That the deceased knew that this car was imperfect; that it was his duty not to use it, but to send it to the shop for repairs; that it was his especial duty to examine the cars and see that they were in good order, and if found out of repair not to use them, but to send them to the shop. In negligent disregard of his duty he used this car and was injured, and it is entirely clear, therefore,

that the consequences of that injury cannot be visited upon the defendant.

"The judgment should, therefore, be reversed and a new trial granted, costs to abide event."

*Robert F. Wilkinson* for appellant.

*John Hackett* for respondent.

EARL, Ch. J., reads for reversal.
All concur.
Judgment reversed.